[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

--------------------------------------

No. 06-12293
Non-Argument Calendar

--------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-02437-CV-SLB

VOLANDA JONES,

Plaintiff-Appellant,

versus

U.S. DEPARTMENT OF VETERANS AFFAIRS, et al.,

Defendants,

SOMERBY AT UNIVERSITY PARK, L.L.C.,

Defendant-Appellee.

----------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Alabama
----------------------------------------------------------------

**(January 17, 2007)**

Before EDMONDSON, Chief Judge, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Volanda Jones ("Jones") appeals the district court's grant of summary judgment for defendant Somerby at University Park, L.L.C. ("Somerby")[1] on Jones's claims of retaliatory discharge, brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a). We find no reversible error; we affirm.

Jones, a nurse licensed by the State of Alabama, began working at the Birmingham, Alabama, Veterans Affairs facility in 1997. After she was moved from the night shift to the day shift in early 2002, she applied for and went on leave without pay from the VA. She then filed a complaint of race discrimination and retaliation against the VA with the Equal Employment Opportunity Commission ("EEOC").

In April 2002, while on leave from the VA, Jones began working the evening shift at Somerby, a senior residential community located in Birmingham. In April and June 2002, Jones again applied for and received leave without pay from the VA, based on her representations that her son, who was recovering from throat surgery and has Down's Syndrome, needed constant care. In December 2002, the VA began investigating Jones's employment at Somerby and contacted

---

[1] Jones's original complaint also named the U.S. Department of Veterans Affairs ("VA") as a defendant, but Jones resolved the dispute with the VA and did not name the VA as a defendant in the Amended Complaint.

Allison Naugher ("Naugher"), Somerby's human resources director, requesting specific information on Jones's employment. On 7 February 2003, Naugher questioned Jones about the VA's investigation; Jones informed her of the EEO complaint. Naugher testified that Jones then told her that the VA was "trying to take her [nursing] license" and that she was not "supposed to be working." Jones denies making such statements and maintains that the VA informed Naugher that the VA suspected Jones of falsifying her VA leave documents and that her nursing license was at risk.

Around 20 February 2003, Naugher received a complaint from one of Jones's co-workers, Chris Miranda ("Miranda"), who told Naugher that she believed that Jones was tape recording her and that she was intimidated by Jones and afraid to work with her. Naugher then questioned two other co-workers, Shirley Beck ("Beck") and Gabrielle Warner ("Warner"), who expressed similar worries. Naugher suspended Jones pending an investigation.

On 27 February 2003, Naugher and Eddie Cummings ("Cummings"), Somerby's Director of Assisted Living, met with Jones to discuss the complaints. Naugher and Cummings both testified that Jones was uncooperative and would not respond to their questions, including those about Jones's dispute with the VA. After this meeting, Vance Holder ("Holder"), Somerby's Executive Director,

decided to terminate Jones's employment. The decision was based on information from Naugher, Cummings, and "upon advice of counsel." On 12 March 2003, Somerby's lawyer sent Jones's lawyer a letter terminating Jones's employment; the letter stated – among other things -- that, based on Jones's refusal to cooperate and on her conflicting statements to Naugher, Somerby had "conclude[d] that it cannot place trust in your client's statements."

Jones filed a complaint with the EEOC, alleging that Somerby terminated her employment in retaliation for filing an EEOC charge against the VA. The EEOC dismissed the charge in June 2003, concluding that no Title VII violation could be established. Jones then filed suit against Somerby, claiming retaliatory discharge in violation of Title VII, 42 U.S.C. § 2000e-3(a). Somerby moved for summary judgment, arguing that the employment was terminated based on the following factors: (1) Jones's initial failure to cooperate in Somerby's internal investigation; (2) concerns about her honesty and trustworthiness; and (3) concerns for the safety of the staff and residents based on the complaints lodged against Jones by her co-workers. Jones responded by arguing that Somerby's stated reasons were incredible, by alleging that Naugher falsified her written notes of the complaints, and by pointing to discrepancies between the written notes and

4

the employees' later depositions. Jones also disputed the factual bases for the complaints, as well as several points of Naugher's testimony.[2]

The district court granted summary judgment for Somerby. The court determined that Jones failed to present evidence that Somerby's stated reasons for terminating Jones were pretextual, as Jones's arguments were "based on evidence that Naugher was mistaken or wrong," and that Jones presented no evidence that Holder, the ultimate decisionmaker, did not base his decision on the stated reasons. Jones now appeals.

We review a district court's order granting summary judgment <u>de</u> <u>novo</u>, viewing all facts in the record in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. <u>Frederick v. Sprint/United Mgmt. Co.</u>, 246 F.3d 1305, 1311 (11th Cir. 2001). The moving party must show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. <u>Id.</u>

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and

---

[2]Jones argues that she never told Naugher that Jones was not supposed to be working and that the VA was trying to take her nursing license. She also contends that her "uncooperativeness" was solely based on her refusal to answer questions about the pending EEO charge against the VA.

(3) there was some causal relation between the two events.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  The employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action.  Id.  If accomplished, the plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct.  Id.

The plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989) (quotation marks and citation omitted).  The court's only concern is the honesty of the employer's explanation, even if the employer was mistaken about the facts underlying those reasons.  See Cooper v. Southern Co., 390 F.3d 695, 730 (11th  Cir. 2001).  To survive a motion for summary judgment, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted).

6

Even assuming – as the district court did – that Jones established a prima facie retaliation case, the district court properly granted summary judgment for Somerby because she failed to introduce evidence sufficient to support a jury finding of pretext.  At most, Jones's evidence suggests that Naugher was mistaken about the content of their conversations regarding Jones's dispute with the VA, about the substance of the co-workers' complaints, and about Jones's failure to cooperate.  The evidence does not establish that Naugher[3] did not honestly believe that Jones had been less than forthcoming about her employment with the VA and that Jones was thus untrustworthy.  The minor inconsistencies between some of Jones's co-workers' signed statements and their later depositions do not contradict that the co-workers did complain to Naugher about Jones, did feel intimidated by

_____

[3]As acknowledged by the district court, Holden was the actual decisionmaker in this case.  On appeal, Jones argues that Naugher used Holden as her "cat's paw" and that Naugher should be regarded as the real decisionmaker. See Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998) ("[I]f the plaintiff shows that . . . the decisionmaker acted in accordance with the harasser's decision without h[im]self evaluating the employee's situation[,] causation is established.").  We need not address this argument, which was not raised below, as we conclude that Jones failed to present sufficient evidence to show that Naugher – much less Holder – was motivated by an improper animus.

her, and did believe that she was recording their conversations.[4] Jones produced no evidence to support her assertions that Naugher fabricated the complaints.

Also, Jones propounded no evidence contradicting Naugher's and Cummings's testimony that she was uncooperative and belligerent during the internal investigation; that Jones may have refused to answer questions that she felt were unfair or beyond the scope of Somerby's investigation and that she had a legitimate reason for raising her voice (laryngitis) does not show that Naugher and Cummings did not perceive her as uncooperative. Last, contrary to Jones's assertions, Somerby's stated reasons for Jones's termination throughout this litigation have been entirely consistent with the termination letter sent to Jones's lawyer. In fact, Jones testified that she understood that she was terminated because she was seen as untrustworthy and uncooperative. Thus, although Jones's evidence may raise a question of fact about whether her termination was mistaken or unfair, she has produced no evidence disputing Somerby's assertions of honest reliance on the proffered reasons.

---

[4] Jones specifically argues that Naugher added language to both Miranda's and Beck's statements indicating that they knew that Jones carried a tape recorder at work. Although both co-workers testified at their depositions that they never actually saw the tape recorder, they also testified that they believed that Jones carried a recorder with her and that they were afraid that she would record their conversations.

Because Jones has failed to introduce evidence that the reasons proffered by Somerby were mere pretexts for retaliation, the district court properly granted Somerby's motion for summary judgment. The judgment is therefore

AFFIRMED.